### 9828

### STATE *EX REL.* ADDY v. STATE BOARD OF EDUCATION *ET AL.*

#### (94 S. C. 110.)

SCHOOLS AND SCHOOL DISTRICTS—TEXTBOOKS—ADOPTION AND CHANGE—STATE BOARD.—Civ. Code 1912, sec. 1708, as amended by Acts 1914, p. 450, empowering the State Board of Education to prescribe and enforce the use of a uniform series of textbooks, provided that it cannot, without permission of legislature, change a textbook within five years from its adoption, making it unlawful for teachers to use any book not prescribed without consent of the board, and provided that not more than 50 per cent. of the exchangeable books used shall be changed at one adoption, does not prevent the board increasing the number of courses and studies, or require the actual teaching for the five years after an adoption of 50 per cent. of the books in the prior adoption, but merely requires the preservation of the value for purpose of exchange, if not taught, of 50 per cent. of the books purchased under the prior adoption.

In Original Jurisdiction, October term, 1917. Petition dismissed.

Proceeding by the State, on the relation of James B. Addy, against the State Board of Education and its members for injunction.

*Messrs. Lawson D. Melton* and *Cole. L. Blease,* for petitioner.

*Messrs. Geo. B. Cromer* and *John J. McSwain,* for respondents.

November 15, 1917.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is a proceeding in the original jurisdiction of the Court, wherein the petitioner seeks to enjoin the State

board of education from enforcing the contract made by them with the publishers at June meeting in 1917. The petitioner alleges in this adoption the board violated that part of the act of 1914, p. 450, which amended section 1708 of the Civil Code of Laws 1912, which forbids it to change more than 50 per cent. of the exchangeable books. This is the sole point of attack, and on this ground alone the petitioner asks that the board be enjoined from enforcing the contract made with the publishers. The respondents made return and raised three points. The third is that in the adoption of June, 1917, the respondents did not change more than 50 per cent. of the exchangeable books in use in the public schools under the adoption of 1911. The petitioner did not traverse the return of the respondents, but contends that inasmuch as the State board increased the number of studies in the schools that necessitated the purchase of additional books and contracted for the purchase of the same, that this put an additional burden on the parents of children and patrons of the schools and required of them a greater expenditure by them than 50 per cent. which they paid under the 1911 adoption. Under section 1708 of the Code of Laws 1912, the State board of education is empowered to prescribe and enforce the use of a uniform series of textbooks in the free public schools of the State, provided that it shall not have the power without the permission of the General Assembly to change a textbook within five years from the date of its adoption. The State board prescribes the books to be taught, and it is unlawful for teachers drawing public money to use any book not prescribed without consent in writing of the board. An amendment to this section (1708) by acts 1914, p. 450, provided:

"That not more than 50 per cent. of the exchangeable books used in the first, second and third grades, and not more than 50 per cent. of the exchangeable books used in the fourth, fifth, sixth and seventh grades, and not more than 50 per cent. of the exchangeable books used in the high

school grades as designated by the State board of education, shall be changed at any one adoption."

The use of textbooks under the adoption of 1911 expired June 30, 1917. The State board in June, 1917, prescribed courses of study for the public schools, and adopted textbooks for use from July 1, 1917, to June 30, 1922, and contracts were entered into with publishers at the June, 1917, meeting.

The intention of the legislature is plain that the State board of education have the fundamental and inherent right and will use discretion in prescribing courses of study, in adopting textbooks, and generally in promoting the education of the citizens of the State and the interests of the public schools either in prescribing additional courses which require the adoption and purchase of new books, provided that under the act of 1914 they are forbid making a change of more than 50 per cent. of the exchangeable books. Fifty per cent. of exchangeable books are to be retained by them, so that the value is unimpaired and the scholar has the right to exchange it for any other book needed in the school from the list of books prescribed by the State board of education, paying the difference between the book exchanged and the book received, as provided for under the terms of the contract made between the State board of education and the publishers. Under the law the State board of education adopts certain books to be taught in the public schools, and no book can be taught in the public schools, unless adopted and prescribed by the State board of education; but the teachers of the public schools can take out of the books so adopted such books as they desire to teach, and leave out any books that they do not desire to teach—that is to say, in the 1917 adoption a teacher can take out of that adoption any book he pleases, and any 1911 books left in the adoption of 1917 he can select if he wishes, but cannot be compelled to do so if he chooses books in the 1917 adoption that teach the same subjects as the books of the 1911 adoption. They

need not select any of the old books of the 1911 adoption if they prefer other books of the 1917 adoption on the same subjects. But 50 per cent. of the books of the 1911 adoption, as provided for in the act of 1914, must be returned and made exchangeable for the books prescribed by the State board in its adoption in 1917 without loss to the purchaser; or taught in the schools as the case may be. The intent was to fix and preserve the value of the book purchased so it could be used if taught in the school or exchanged for another book if found desirable, convenient, or necessary; the difference in the value of the books exchanged being adjusted as provided for by the contracts between the State board of education and the publishers. It never was the intention that the board of education could not increase the number of courses and studies in the schools as necessitated by the demands of a modern world advancement, civilization and public policy, and for a half of a decade to teach 50 per cent. of the books adopted actually, but the intent was to preserve the value of 50 per cent. of the books purchased, so if necessary to use or exchange, and credit allowed for what had been paid for the book when offered for another book of the list prescribed and adopted by the State board; the intent being that 50 per cent. of the books adopted every five years was to retain their value, and not be discarded and rendered valueless.

The injunction asked for is refused, and petition dismissed.